UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CALVARY INDUSTRIES, LLC,            Case No. 1:22-cv-340
    Plaintiff,                                    Litkovitz, M.J.

vs.

TAV HOLDINGS, INC.,                 **ORDER**
    Defendant.

Plaintiff Calvary Industries, LLC ("Calvary"), an Ohio corporation with its principal place of business in Ohio, brings this action against defendant TAV Holdings, Inc. ("TAV"), a Georgia corporation, alleging a single cause of action stemming from TAV's alleged non-payment for goods. This matter is before the Court on TAV's motion to dismiss for lack of jurisdiction (Docs. 9, 11)[1], Calvary's response in opposition (Docs. 16, 18)[2], and TAV's reply memorandum (Doc. 23).

**I. Factual Allegations**

Calvary is a company that formulates and produces blended process chemicals and other products, including Cal Ban 966 and Cal Floe 1516, in its Fairfield, Ohio facility. (Doc. 3). Calvary alleges that from December 8, 2021 to March 2, 2022, TAV placed five separate orders for Cal Ban 966 and Cal Floc 1516 totaling $124,168.10. (*Id.* at PAGEID 19). The invoices specified that payment was due upon receipt. (*Id.*). Despite contacting TAV on multiple occasions requesting payment for the products, Calvary alleges that TAV failed to pay the amount due. (*Id.*).

---

[1] TAV's motion was initially filed as docket entry 9. In order to comply with S.D. Ohio Civ. R. 5.1(c), TAV refiled the motion as docket entry 11, which is the document upon which the Court relies throughout its Order.
[2] Calvary's response was initially filed as docket entry 16. In order to comply with S.D. Ohio Civ. R. 5.1(c), Calvary refiled the motion as docket entry 18, which is the document upon which the Court relies throughout its Order.

Based upon these factual allegations, Calvary initiated this action seeking payment of the invoices and other relief. (*Id*.).

## II. Motion to Dismiss (Doc. 11)

### A. The Parties' Positions

TAV filed a motion to dismiss Calvary's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Doc. 11). TAV argues that the Court does not have personal jurisdiction over TAV because (1) there is no evidence that TAV intentionally directed its activities to Calvary in Ohio, (2) the invoices attached to the complaint fail to show that TAV had sufficient contacts in Ohio, and Calvary cannot point to any other actions by TAV showing otherwise, (3) Calvary's claim arises from events that substantially or entirely occurred in Georgia and not in Ohio, and (4) Calvary fails to allege that TAV purposefully availed itself of the privilege of conducting its activities in Ohio. (*Id*.). TAV argues that the "mere fact that Calvary has a principal business location in Ohio and allegedly sent TAV invoices from Ohio is not sufficient to constitute TAV's 'transacting business' for purposes of Ohio's long-arm statute." (*Id*. at PAGEID 75). TAV further argues that due process does not permit the Court to exercise personal jurisdiction over TAV because TAV has not purposefully availed itself of Ohio law, Calvary's claim does not arise from TAV's activities in Ohio, and it is unreasonable to subject TAV to jurisdiction in Ohio. (*Id*. at PAGEID 75-80). TAV attaches the Declaration of Mary Sargent, chief financial officer of TAV, to the motion to dismiss. (Doc. 11-1, Sargent Decl., at PAGEID 82-84). In her declaration, Ms. Sargent declares that no business transactions or services provided by Calvary to TAV occurred in Ohio, and any Calvary employees or representatives were in Georgia when any transactions occurred between Calvary and TAV. (*Id*.).

2

Calvary argues that TAV's motion to dismiss should be denied because the Court has jurisdiction over TAV under Ohio's Long Arm Statute. (Doc. 18). Calvary contends that TAV transacted business in Ohio and purposefully availed itself of the privilege of conducting its activities in Ohio by (1) initiating the business relationship with Calvary in Ohio by intentionally reaching into Ohio of its own volition and soliciting business with Calvary, (2) making multiple trips to Calvary's Fairfield, Ohio facility, (3) requesting that Calvary provide technical expertise and advice to TAV from its Fairfield, Ohio facility, and (4) requesting that Calvary build new chemical feed equipment and establish dosing, feed rates, and an execution strategy at Calvary's Fairfield, Ohio facility. Calvary argues that TAV purposefully availed itself of the privilege of conducting activities within the state by reaching into the Ohio marketplace and establishing an ongoing business relationship with Calvary in Ohio. Calvary further contends that the Court's jurisdiction over the matter is reasonable because Ohio has a legitimate interest in protecting the business interests of its citizens.

Calvary attaches the Affidavit of Tyler Morelock, a sales representative with Calvary, to its response in opposition to TAV's motion to dismiss. (Doc. 18-1, Morelock Aff., at PAGEID 119-24). Mr. Morelock avers that in November 2020, he received an unsolicited communication from one of TAV's employees for the purchase of defoamer to assist with TAV's wastewater treatment process. (*Id*. at PAGEID 119-20). After this solicitation, TAV represented to Mr. Morelock that it urgently needed this product and requested that Calvary supply it from its facility in Fairfield, Ohio as soon as possible. (*Id*. at PAGEID 120). After this initial purchase, TAV "regularly and consistently ordered defoamer from Calvary in Ohio." (*Id*.). In addition to defoamer, TAV approached Calvary at its Fairfield, Ohio office to order Cal Floc 1552, a consumable powder polymer manufactured by Calvary in Ohio. (*Id*. at PAGEID 120-21). TAV

3

placed an order for Cal Floc 1552 on July 2, 2021. (*Id*. at PAGEID 121). Mr. Morelock states that TAV ordered the defoamer and powder polymer from Calvary's Fairfield, Ohio offices "several times each month." (*Id*.). Mr. Morelock states that TAV "had its own personnel, on multiple occasions, pick-up Calvary's powder polymer from Calvary's facility in Fairfield, Ohio." (*Id*.).

Further, to optimize the use of Calvary's products in TAV's manufacturing processes, TAV "requested technical expertise and advice from Calvary staff via telephone calls, text messages, and e-mails to Calvary's Fairfield, Ohio office." (*Id*.). Mr. Morelock states that "technical experts including myself fielded technical requests for assistance day and night from Calvary's Fairfield, Ohio facility for Defendant." (*Id*.). Mr. Morelock explains:

> Throughout the parties' relationship, Defendant's request for technical assistance and expertise grew. For example, Defendant requested that Calvary perform physical analysis of Defendant's waste water at Calvary's Fairfield, Ohio facility to perform technical services concerning that waste water in Fairfield, Ohio. These samples were transmitted to Calvary's Fairfield, Ohio facility by Defendant. Calvary thoroughly tested and evaluated Defendant's waste water samples at Calvary's laboratory in Fairfield, Ohio. Subsequently, Calvary provided written reports of its analysis performed at its Fairfield, Ohio facility to Defendant. The physical work of analyzing these samples, troubleshooting issues, and the time and effort that went into generating the results was all undertaken and completed by my team and me in Ohio at Calvary's facility and in their laboratory.
>
> Defendant subsequently requested the assistance of Calvary's technical experts from Fairfield, Ohio, requesting they analyze its chemical feed process at Defendant's facility. The Calvary team and I engaged in substantial supporting, planning and analysis at Calvary's Fairfield, Ohio offices to fulfill Defendant's request. We built new chemical feed equipment, established proper dosing and feed rates, and the entire execution strategy at Calvary's Fairfield, Ohio facility. After completing that work, I traveled to Georgia with Calvary's technical team to implement the manufacturing solution we prepared for Defendant at its request at Calvary's Fairfield, Ohio facility. Thus, at Defendant's request we performed the above work in Ohio and then implement our process improvement at Defendant's facility in Georgia.

(*Id*. at PAGEID 122). Mr. Morelock also states from "time to time, Defendant requested that Calvary staff and I come to their facility to install Calvary supplied equipment, troubleshoot any issues and to advise them on how to best use the products they purchased from Calvary's Fairfield, Ohio facility." (*Id*. at PAGEID 123).

In its reply memorandum, TAV argues that despite the inclusion of Mr. Morelock's affidavit, Calvary nevertheless fails to meet its burden of proving that the Court may exercise specific personal jurisdiction over TAV. (Doc. 23). TAV contends that Mr. Morelock's affidavit sets forth insufficient facts lacking in specificity or reasonable particularity for this Court to realistically determine that it has jurisdiction over TAV. TAV further maintains that Calvary fails to provide specific facts that would subject TAV to Ohio's Long Arm Statute and establish sufficient Ohio contacts that would satisfy the due process requirements for personal jurisdiction.

### B. Analysis

The issue presented by TAV's motion to dismiss is whether the Court has personal jurisdiction over TAV pursuant to Ohio's long-arm statute and the requirements of the federal due process clause of the Fourteenth Amendment.

Where a defendant has moved to dismiss a case under Rule 12(b)(2) for lack of personal jurisdiction, and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a "prima facie" showing that the court has personal jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). The Court considers the pleadings in the light most favorable to the plaintiff and does not weigh the disputed facts, although the Court may consider the defendant's undisputed factual assertions. *Id*. (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*,

5

106 F.3d 147, 153 (6th Cir. 1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). Moreover, in considering a Rule 12(b)(2) motion to dismiss prior to discovery or an evidentiary hearing, a plaintiff's burden is "relatively slight" when establishing personal jurisdiction based on written submissions and affidavits. *Est. of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).

Where, as here, a federal court's jurisdiction is premised on diversity of citizenship, the plaintiff must satisfy state law requirements for personal jurisdiction. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (citing *Est. of Thomson*, 545 F.3d at 361). Under Ohio law, personal jurisdiction over a non-resident defendant exists only if: (1) Ohio's long-arm statute confers jurisdiction, and (2) the requirements of the federal due process clause of the Fourteenth Amendment are met. *Conn*, 667 F.3d at 712 (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010); *Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994)).

Ohio's long-arm statute confers personal jurisdiction over a non-resident if the nonresident's conduct falls within one of the nine bases for jurisdiction listed under the statute. Calvary raises the following potentially relevant base for jurisdiction:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> * * *
> (B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state.

Ohio Rev. Code § 2307.382.

Federal due process requires that a non-resident defendant have sufficient "minimum contact[s]" with the forum state such that a finding of personal jurisdiction does not "offend

6

traditional notions of fair play and substantial justice." *Conn*, 667 F.3d at 712 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Federal due process encompasses two types of personal jurisdiction: "general jurisdiction, when the suit does not arise from [the] defendant's contacts with the forum state; and specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Id*. at 712-13 (citing *Third Nat'l Bank*, 882 F.2d at 1089). A non-resident defendant may be subject to the general jurisdiction of the forum state only where his contacts with that state are "continuous and systematic." *Id*. at 713 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984)). A finding of specific jurisdiction, relevant here, requires that three elements be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. (quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

Considering the facts in a light most favorable to Calvary, the Court finds that Calvary has made out a prima facie case for the Court's exercise of personal jurisdiction over TAV. The Court concludes that TAV transacted business in Ohio for purposes of Ohio's long-arm statute, *see* Ohio Rev. Code § 2307.382(A)(1), which "is coextensive with the purposeful availment prong of the constitutional analysis." *Ironhead Marine, Inc. v. Donald C. Hanna Corp.*, No. 3:10-cv-82, 2011 WL 6817764, at *4 (N.D. Ohio Dec. 28, 2011) (quoting *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006)). "The phrase 'transacting any business' is broad and encompasses more than 'contract.'" *Clark v. Connor*, 695 N.E.2d 751, 755 (Ohio 1998) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*,

Inc., 559 N.E.2d 477, 480 (Ohio 1990)). The Court identifies the following allegations related to TAV's transaction of business in/purposeful availment of Ohio:

- TAV initiated the business relationship with Calvary, an Ohio company, in November 2020 when Calvary received an unsolicited communication from one of TAV's employees for the purchase of defoamer to assist with TAV's wastewater treatment process. (Doc. 18-1, Morelock Aff., at PAGEID 119-20).

- TAV regularly and consistently placed multiple purchase orders with Calvary out of Calvary's Fairfield, Ohio facility. (*Id*. at PAGEID 120-21).

- TAV had its own personnel, on multiple occasions, retrieve and accept purchase orders directly from Calvary's facility in Fairfield, Ohio. (*Id*. at PAGEID 121).

- TAV requested services from Calvary in the form of technical expertise and assistance, conducted via telephone, email, and text messages from Calvary's Fairfield, Ohio facility. (*Id*.).

- TAV requested services in the form of physical testing and analysis, conducted at Calvary's Ohio facility. TAV transmitted wastewater samples to Calvary's facility in Fairfield, Ohio for this testing to be conducted. (*Id*. at PAGEID 122).

- At the request of TAV, Calvary built new chemical feed equipment, established proper dosing and feed rates, and developed the entire execution strategy for this process at Calvary's Fairfield, Ohio facility. (*Id*.).

The above does not describe a one-off transaction between Calvary and TAV but instead a business relationship lasting well over a year. *See Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (finding that the plaintiff had demonstrated "purposeful availment" where "the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years"); *Long v. Grill*, 799 N.E.2d 642, 648 (Ohio Ct. App. 2003) (three-month business relationship, inter alia, sufficient to demonstrate minimum contacts with Ohio). *See also Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 336 (6th Cir. 2017) (holding that Ohio Revised Code § 2307.382(A)(1) was satisfied where the defendant "reached out to [the plaintiff] in Ohio for a business relationship," negotiated with the plaintiff in Ohio, and "entered into statements of work

8

for services to be completed in Ohio"); *Twist Aero, LLC v. B GSE Grp., LLC*, No. 3:19-cv-337, 2020 WL 1941013, at *7 (S.D. Ohio Apr. 22, 2020) ("[F]acts that services allegedly arose from the purchase order Defendant sent into Ohio, from the parties' business transaction in Ohio, and from Defendant's alleged failure to make payment in Ohio for the services" supported a finding of personal jurisdiction over the defendant.), *report and recommendation adopted as to personal jurisdiction*, 2020 WL 3265628 (S.D. Ohio June 17, 2020)). Making all inferences in Calvary's favor, the Court finds that Calvary's evidence supports jurisdiction under Ohio Revised Code § 2307.382(A)(1) and, as such, that the purposeful availment element of the federal specific jurisdiction analysis is satisfied. *See Ironhead Marine*, 2011 WL 6817764, at *4.

Calvary has satisfied the remaining elements of the federal specific jurisdiction analysis. The second element requires that "the cause of action . . . arise from the defendant's activities" in Ohio. *Conn*, 667 F.3d at 713 (quoting *Bird*, 289 F.3d at 874). Here, the cause of action arises from TAV's alleged $124,168.10 balance of unpaid invoices based on products it purchased from Calvary's Fairfield, Ohio facility. Finally, where the first two elements of the specific jurisdiction analysis are met, jurisdiction will generally be found reasonable under the third element—the reasonableness of jurisdiction—unless TAV makes an unusually compelling showing otherwise. *Third Nat. Bank*, 882 F.2d at 1092; *Kauffman Racing Equip.*, 930 N.E.2d at 797. Other than to assert general notions of unfairness and inconvenience, TAV makes no such compelling showing here. In any event, Ohio's interest in the controversy is relevant to the reasonableness element, and a forum state has a significant and legitimate interest in redressing injury that occurs within its borders. *Kauffman Racing Equip.*, 930 N.E.2d at 797 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984), and *Bird*, 289 F.3d at 875).

TAV argues it would be "unduly burdened if it had to defend this case in Ohio" because TAV "solely operates out of Georgia; its only two facilities are located in Georgia; and all TAV employees are employed and reside in Georgia." (Doc. 23 at PAGEID 160). These arguments are not persuasive. *See Air Prod. & Controls, Inc.*, 503 F.3d at 551 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) ("[P]hysical presence in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'"). *Cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) ("This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."). Construing Calvary's allegations in its favor, Calvary has made out a prima facie case that this Court's jurisdiction over TAV is consistent with Ohio's long-arm statute and federal due process. TAV's motion to dismiss under Rule 12(b)(2) is denied.

**IT IS THEREFORE ORDERED THAT:**

1. TAV's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 11) is **DENIED**.

Date: 12/8/2022

Karen L. Litkovitz
Chief United States Magistrate Judge